Andrew G. Gunem, No. 354042
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
agunem@straussborrelli.com

*Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

ROBERT PETTINGER, on behalf of his minor child, B.P. and KYLIE STOWE, on behalf of her minor child, Z.S., and all others similarly situated,

Plaintiffs,

v.

POWERSCHOOL GROUP LLC and POWERSCHOOL HOLDINGS, INC.,

Defendants.

Case No. 2:25-at-00067

**CLASS ACTION COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND EQUITABLE RELIEF FOR:**

3. **NEGLIGENCE;**
4. **NEGLIGENCE *PER SE*;**
5. **BREACH OF CONTRACT;**
6. **UNJUST ENRICHMENT;**
7. **INVASION OF PRIVACY;**
8. **CALIFORNIA UNFAIR COMPETITION LAW;**
9. **CALIFORNIA CUSTOMER RECORDS ACT;**
10. **CALIFORNIA CONSUMER PRIVACY ACT.**

**DEMAND FOR JURY TRIAL**

Plaintiffs, Robert Pettinger, on behalf of his minor child B.P., and Kylie Stowe, on behalf on behalf of her minor child Z.S., and all others similarly situated, states as follows for their class action complaint against Defendants, PowerSchool Group LLC, and PowerSchool Holdings Inc., ("PowerSchool" or "Defendant"):

## NATURE OF THE ACTION

1. On December 28, 2024, PowerSchool, a leader in cloud-based software for K-12 education in North America, lost control over its computer network and the highly private Sensitive Information stored on the computer network in a data breach perpetrated by cybercriminals ("Data Breach").

2. PowerSchool's breach differs from typical data breaches because it affects consumers who had no relationship with PowerSchool, never sought one, and never consented to PowerSchool collecting and storing their information.

3. Following an internal investigation, Defendant learned cybercriminals gained unauthorized access to consumers' personally identifiable information ("PII") including names, birth dates, addresses, parent/guardian names, and parent guardian phone numbers, as well as private health information ("PHI") medical conditions and allergies. PII and PHI are collectively referred to as "Sensitive Information".

4. On information and belief, cybercriminals bypassed Defendant's inadequate security systems to access consumers' Sensitive Information in its computer systems.

5. On information and belief, as of January 12, 2025, Defendant has not yet notified Class Members, including Plaintiffs, about the widespread Data Breach through a formal breach letter and instead has only notified its clients who in turn, alerted Plaintiffs and the Class of the breach via email ("Email Breach Notice"). A sample email breach notice to Idaho's attorney general office is attached as Exhibit A. The email Plaintiff Stowe received regarding PowerSchool's breach is attached as Exhibit B.

6. PowerSchool continues to delay formally informing Class Members even though Plaintiffs and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

7. Defendant's Email Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its consumers how many people were impacted, how the breach happened, or why Defendant has not begun formally notifying victims that hackers had gained access to highly private Sensitive Information.

8. Defendant's failure to timely detect and report the Data Breach made its consumers vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

9. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

10. In failing to adequately protect consumers' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed thousands of its current and former consumers.

11. Plaintiffs and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiffs and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

12. Plaintiffs minor children are Data Breach victims.

13. Accordingly, Plaintiffs bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

**PARTIES**

14. Plaintiff, Robert Pettinger, is a natural person and citizen of Ohio, where he intends to remain.

15. Plaintiff, Kylie Stowe, is a natural person and citizen of Iowa, where she intends to remain.

16. Defendant, PowerSchool Group LLC, is a company incorporated in Delaware, with its principal place of business located at 150 Parkshore Drive Folsom, CA.

17. Defendant, PowerSchool Holdings Inc., is a company incorporated in Delaware, with its principal place of business located at 150 Parkshore Drive Folsom, CA.

**JURISDICTION & VENUE**

18. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class. Defendant and at least one Plaintiff are citizens of different states.

19. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in this District and does substantial business in this District.

20. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTUAL ALLEGATIONS**

***PowerSchool***

21. PowerSchool boasts that it is "a leading provider of cloud-based software for K-12 education in North America"[1] It touts an annual revenue of $697.56 million.[2]

22. As part of its business, Defendant receives and maintains the Sensitive Information of thousands of consumers (such as, *inter alia*, its clients' students). In collecting and maintaining Sensitive Information , Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class members themselves took reasonable steps to secure their minor children's Sensitive Information.

---

[1] Linkedin, PowerSchool, https://www.linkedin.com/company/powerschool-group-llc/ (last visited January 12, 2025).

[2] Stock Analysis, https://stockanalysis.com/stocks/pwsc/revenue/ (last visited January 12, 2025).

23. In collecting and maintaining their current and former consumers' Sensitive Information, Defendant agreed that it would safeguard the data in accordance with state law and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their Sensitive Information

24. Defendant understood the need to protect consumers' Sensitive Information and prioritize its data security.

25. Indeed, Defendant's Privacy policy acknowledges that "We seek to protect our customers' personal data from unauthorized access, use, modification, disclosure, loss, or theft by leveraging various reasonable security measures and methods[.]"[3]

> We seek to protect our customers' personal data from unauthorized access, use, modification, disclosure, loss, or theft by leveraging various reasonable security measures and methods to secure our customers' personal data throughout its processing lifecycle with PowerSchool applications. Our overall aim is to ensure the confidentiality, integrity, and availability of our customers' personal data by leveraging technical, organizational, and where appropriate, physical security methods. Security protection at PowerSchool is a cross-functional activity that intersects our workforce duties, and we have relevant security and privacy policies to drive expectations from the workforce.




26. Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonably cybersecurity safeguards or policies to protect consumers' Sensitive

[3] PowerSchool, Privacy Policy, https://www.powerschool.com/privacy/ (last visited January 12, 2025).

Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for multiple cybercriminals to exploit and gain access to consumers' Sensitive Information.

***Defendant Failed to Safeguard Consumers' Sensitive Information***

27. Plaintiffs are unsure how Defendant got their and their minor children's information but assumes that their minor children's schools provided PowerSchool with their Sensitive Information.

28. On information and belief, Defendant collects and maintains consumers' Sensitive Information in its computer systems.

29. In collecting and maintaining Sensitive Information, Defendant implicitly agrees that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

30. According to Defendant's Email Breach Notice, on January 7, 2025, PowerSchool began notifying its clients, Plaintiffs minor children's school districts, that "an unauthorized individual used a compromised credential to access their system. The threat actor then used maintenance access channels to access data stored on the school district's Power School servers." Ex. A.

31. Following an internal investigation, Defendant determined that "the threat actor did in fact steal data from the Students table and the Teachers table in our PowerSchool database. These tables included records of students and teachers dating back to 2005." Ex. A.

32. In other words, the Data Breach investigation revealed Defendant's cyber and data security systems were so completely inadequate that it allowed cybercriminals to acquire obtain files containing a treasure trove of thousands of its consumers' highly private information.

33. Through its inadequate security practices, Defendant exposed Plaintiffs' and the Class's Sensitive Information for theft and sale on the dark web.

34. As of January 12, 2025, Defendant has not yet formally began notifying Class Members about the Data Breach.

35. Despite its duties to safeguard Sensitive Information, Defendant did not in fact follow industry standard practices in securing consumers' Sensitive Information, as evidenced by the Data Breach.

36. In response to the Data Breach, Defendant contends that is has "taken all appropriate steps to further prevent the exposure of information affected by this incident.." Ex. A. Though Defendant fails to expand on what these additional steps are, such steps should have been in place before the Data Breach.

37. On information and belief, Defendant will offer several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Sensitive Information that cannot be changed.

38. Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' Sensitive Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

39. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiffs' and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

40. On information and belief, Defendant failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its consumers' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing Sensitive Information.

***The Data Breach was a Foreseeable Risk of Which Defendant was on Notice.***

41. It is well known that Sensitive Information is an invaluable commodity and a frequent target of hackers.

42. In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[4]

43. In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that their electronic records would be targeted by cybercriminals.

44. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

45. Despite the prevalence of public announcements of data breach and data security compromises, and despite their own acknowledgments of data security compromises, and despite their own acknowledgment of their duties to keep Sensitive Information private and secure, Defendant failed to take appropriate steps to protect the Sensitive Information of Plaintiffs and Class Members from being compromised.

46. In the years immediately preceding the Data Breach, Defendant knew or should have known that its computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

47. In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly

[4] Data breaches break record in 2021, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed September 4, 2023).

visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[5]

48. In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[6]

49. In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[7]

50. This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

51. In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted Sensitive Information of thousands of its consumers in an Internet-accessible environment, had reason to be on guard for the exfiltration of the Sensitive Information and Defendant's type of business had cause to be particularly on guard against such an attack.

---

[5] High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations, FBI, available at https://www.ic3.gov/Media/Y2019/PSA191002 (last accessed September 4, 2023).

[6] Ransomware mentioned in 1,000+ SEC filings over the past year, ZDNet, https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed September 4, 2023).

[7] Ransomware Guide, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last accessed September 4, 2023).

52. Moreover, the risk to Plaintiffs' minor child, and other potential minor Class members is substantial given their age and lack of established credit because their information can be used to create a "clean identity slate." It is not surprising, then, that one report found that children are 51% more likely be victims of identity theft than adults.[8] Cybercriminals on the dark web have been caught selling Social Security numbers of infants for $300 per number to be used on fraudulent tax returns.[9]

53. According to Robert P. Chappell, Jr., a law enforcement professional, a minor's information can be stolen and used until the minor turns eighteen years old before the minor even realizes he or she has been victimized.[10]

54. Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiffs' and Class Members' Sensitive Information could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

55. Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its consumers' sensitive data elements within the Sensitive Information to protect against their publication and misuse in the event of a cyberattack.

***Robert Pettinger and Minor, B.P., Experience and Injuries***

56. Plaintiff received an email through his minor child's school district regarding the data breach, stating that his minor child's Sensitive Information was exposed during the Data Breach.

57. Plaintiff is unsure how Defendant got his minor children's information but assumes that his minor child's school provided PowerSchool with the Sensitive

---

[8] Avery Wolfe, *How Data Breaches Affect Children*, Axion Cyber Sols., https://axiomcyber.com/data-breach/how-data-breaches-affect-children/(last visited March 13, 2023).

[9] *Id.*

[10] Brett Singer, *What is Child Identify Theft?*, Parents, https://www.parents.com/kids/safety/tips/what-is-child-identity-theft/ (last visited March 13, 2023).

Information. Regardless, Defendant obtained and continues to maintain Plaintiff's minor child's Sensitive Information and has a continuing legal duty and obligation to protect that Sensitive Information from unauthorized access and disclosure.

58. Defendant deprived Plaintiff of the earliest opportunity to guard his minor child against the Data Breach's effects by failing to promptly notify him.

59. Defendant exposed Plaintiff's minor child's Sensitive Information for theft by cybercriminals and sale on the dark web.

60. Plaintiff does not recall ever learning that his minor child's Sensitive Information was compromised in a data breach incident, other than the breach at issue in this case.

61. As a result of the Data Breach, Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, and self-monitoring his minor child's information to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

62. Plaintiff fears for his minor child's personal financial security and uncertainty over what Sensitive Information exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

63. Plaintiff's minor child suffered actual injury from the exposure of his Sensitive Information —which violates her rights to privacy.

64. Plaintiff's minor child, B.P., has suffered actual injury in the form of damages to and diminution in the value of his Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

65. Plaintiff's minor child, B.P., has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

66. Defendant's offer of free credit monitoring does nothing to Protect Plaintiff's minor child, B.P., because the child must have established credit to enroll. As a minor, B.P., does not have established credit yet. However, hackers may still use a minor's information to take out credit cards and car loans.[11] A child's information can be stolen at birth and used until the child turns eighteen years old before the child realizes they've been victimized.[12]

67. The risk to Plaintiff child, B.P., as a minor, is substantial given the minor's lack of established credit because his information can be used to create a "clean identity slate." Plaintiff minor child, S.S., remains at a present and continued risk of harm due to the exposure and potential misuse of her personal data by criminal hackers.

68. Indeed, shortly after the Breach, Plaintiff was alerted to a fraudulent attempt by an unauthorized individual to withdraw money from his bank account using his minor child's Sensitive Information. Plaintiff did not recognize and certainly did not authorize this fraudulent attempt at withdrawal, and this attempt suggests his minor child's information that B.P.'s Sensitive Information is now in the hands of cybercriminals.

69. Plaintiff has a continuing interest in ensuring that his minor child's Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Kylie Stowe and Minor, Z.S., Experience and Injuries***

70. Plaintiff received an email through her minor child's school district regarding the data breach, stating that her minor child's Sensitive Information was exposed during the Data Breach.

71. Plaintiff is unsure how Defendant got her minor children's information but assumes that her minor child's school provided PowerSchool with her Sensitive

---

[11] Hackers are leaking children's data — and there's little parents can do, NBC News (Sept. 10, 2021) https://www.nbcnews.com/tech/security/hackers-are-leaking-childrens-data-s-little-parents-canrcna1926

[12] Brett Singer, What is Child Identity Theft? Parents.com, https://www.parents.com/kids/safety/tips/what-is-child-identity-theft/

Information. Regardless, Defendant obtained and continues to maintain Plaintiff's minor child's Sensitive Information and has a continuing legal duty and obligation to protect that Sensitive Information from unauthorized access and disclosure.

72. Defendant deprived Plaintiff of the earliest opportunity to guard her minor child against the Data Breach's effects by failing to promptly notify her.

73. Defendant exposed Plaintiff's minor child's Sensitive Information for theft by cybercriminals and sale on the dark web.

74. Plaintiff does not recall ever learning that his minor child's Sensitive Information was compromised in a data breach incident, other than the breach at issue in this case.

75. As a result of the Data Breach Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, and self-monitoring her minor child's information to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

76. Plaintiff fears for her minor child's personal financial security and uncertainty over what Sensitive Information exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

77. Plaintiff's minor child suffered actual injury from the exposure of her Sensitive Information —which violates her rights to privacy.

78. Plaintiff's minor child, Z.S., has suffered actual injury in the form of damages to and diminution in the value of her Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

79. Plaintiff's minor child, Z.S, .has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties and possibly criminals.

80. Defendant's offer of free credit monitoring does nothing to Protect Plaintiff's minor child, B.P., because the child must have established credit to enroll. As a minor, Z.S. does not have established credit yet. However, hackers may still use a minor's information to take out credit cards and car loans.[13] A child's information can be stolen at birth and used until the child turns eighteen years old before the child realizes they've been victimized.[14]

81. The risk to Plaintiff child, Z.S, as a minor, is substantial given the minor's lack of established credit because his information can be used to create a "clean identity slate." Plaintiff minor child, Z.S. remains at a present and continued risk of harm due to the exposure and potential misuse of her personal data by criminal hackers.

82. Plaintiff has a continuing interest in ensuring that her minor child's Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

83. Plaintiffs and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

84. The ramifications of Defendant's failure to keep Plaintiffs' and the Class's Sensitive Information secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, date of birth, Social Security number, or driver's license number, without permission, to commit fraud or other crimes.

85. The types of Sensitive Information compromised and potentially stolen in the Data Breach is highly valuable to identity thieves. The consumers' stolen Sensitive Information can be used to gain access to a variety of existing accounts and websites to drain assets, bank accounts or open phony credit cards.

---

[13] Hackers are leaking children's data — and there's little parents can do, NBC News (Sept. 10, 2021) https://www.nbcnews.com/tech/security/hackers-are-leaking-childrens-data-s-little-parents-canrcna1926

[14] Brett Singer, What is Child Identity Theft? Parents.com, https://www.parents.com/kids/safety/tips/what-is-child-identity-theft/

86. Identity thieves can also use the stolen data to harm Plaintiffs and Class members through embarrassment, blackmail, or harassment in person or online, or to commit other types of fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits.

87. As a result of Defendant's failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Sensitive Information is used;

b. The diminution in value of the Sensitive Information;

c. The compromise and continuing publication of their Sensitive Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Sensitive Information; and

h. The continued risk to their Sensitive Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in their possession.

88. Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

89. The value of Plaintiffs' and the proposed Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

90. It can take victims years to spot identity or PII and PHI theft, giving criminals plenty of time to use that information for cash.

91. One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

92. Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

93. The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs and other members of the proposed Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

94. Defendant disclosed the Sensitive Information of Plaintiffs and the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiffs and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking,

unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

95. Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, as evidenced by its complete failure to prevent malware in its systems, demonstrates a willful and conscious disregard for privacy, and has exposed the Sensitive Information of Plaintiffs and members of the proposed Class to unscrupulous operators, con-artists, and criminals.

96. Defendant's failure to properly notify Plaintiffs and members of the proposed Class of the Data Breach exacerbated Plaintiffs' and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

97. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

98. In 2016, the FTC updated its publication, Protecting Sensitive Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that they keep;

b. properly dispose of Sensitive Information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

99. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

100. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

101. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer, or in this case, consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

102. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Violated HIPAA***

103. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep consumers' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[15]

104. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[16]

---

[15] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[16] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

105. The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

106. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant's failure to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

107. Plaintiffs bring this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

**All individuals whose Sensitive Information was accessed without authorization in the Data Breach, including all those who received a notice of the Data Breach.**

108. Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

109. Plaintiffs reserve the right to amend the class definition.

110. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

111. **Numerosity**. Plaintiffs are representative of the proposed Class, consisting of several thousands of individuals, far too many to join in a single action;

112. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

113. **Typicality**. Plaintiffs' claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

114. **Adequacy**. Plaintiffs will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with Class members' interests, and they have retained

counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

115. **Commonality**. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

a. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Sensitive Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant was negligent in maintaining, protecting, and securing Sensitive Information;

d. Whether Defendant breached contract promises to safeguard Plaintiffs and the Class's Sensitive Information;

e. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. Whether Defendant's Email Breach Notice was reasonable;

g. Whether the Data Breach caused Plaintiffs' and the Class's injuries;

h. What the proper damages measure is; and

i. Whether Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## FIRST CLAIM FOR RELIEF
## Negligence
## (On Behalf of Plaintiffs and the Class)

116. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

117. Plaintiffs (or their third-party agents) and the Class entrusted their Sensitive Information to Defendant on the premise and with the understanding that Defendant would safeguard their Sensitive Information, use their Sensitive Information for business purposes only, and/or not disclose their Sensitive Information to unauthorized third parties.

118. Defendant owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Sensitive Information in a data breach. And here, that foreseeable danger came to pass.

119. Defendant has full knowledge of the sensitivity of the Sensitive Information and the types of harm that Plaintiffs and the Class could and would suffer if their Sensitive Information was wrongfully disclosed.

120. Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiffs' and Class Members' Sensitive Information.

121. Defendant owed—to Plaintiffs and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Sensitive Information in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiffs and Class Members within a reasonable timeframe of any breach

to the security of their Sensitive Information.

122. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their Sensitive Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

123. Defendant also has a duty to exercise appropriate clearinghouse practices to remove Sensitive Information it was no longer required to retain under applicable regulations.

124. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Sensitive Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

125. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential Sensitive Information, a necessary part of obtaining services from Defendant.

126. The risk that unauthorized persons would attempt to gain access to the Sensitive Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Sensitive Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Sensitive Information —whether by malware or otherwise.

127. Sensitive Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Sensitive Information of Plaintiffs' and Class Members' and the importance of exercising reasonable care in handling it.

128. Defendant improperly and inadequately safeguarded the Sensitive Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

129. Defendant breached these duties as evidenced by the Data Breach.

130. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' Sensitive Information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the Sensitive Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

131. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Sensitive Information of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs and Class Members' injury.

132. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and Class Members' injuries-in-fact.

133. Defendant admitted that the Sensitive Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

134. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

135. And, on information and belief, Plaintiffs' Sensitive Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

136. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Sensitive Information by criminals, improper disclosure of their Sensitive Information, lost benefit of their bargain, lost value of their Sensitive Information, and lost time and money incurred to mitigate

and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CLAIM FOR RELIEF**
**Negligence *Per Se***
**(On Behalf of Plaintiffs and the Class)**

137. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

138. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's Sensitive Information.

139. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, consumers' Sensitive Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Class's Sensitive Information.

140. Defendant breached its duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

141. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its consumers, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

142. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of

the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

143. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

144. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and the Class's Sensitive Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

145. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

146. Defendant violated its duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

147. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiffs and members of the Class, Plaintiffs and members of the Class would not have been injured.

148. The injury and harm suffered by Plaintiffs and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiffs and members

of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

149. Had Plaintiffs and the Class known that Defendant did not adequately protect their Sensitive Information, Plaintiffs and members of the Class would not have entrusted Defendant with their Sensitive Information.

150. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

151. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Sensitive Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Sensitive Information, entitling them to damages in an amount to be proven at trial.

152. Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their Sensitive Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Sensitive Information in its continued possession.

**THIRD CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

153. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

154. Defendant entered into various contracts with its clients to provide education cloud-based services to its consumers.

155. These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiffs and the Class, as it was their confidential Sensitive Information that Defendant agreed to collect and protect through its services. Thus, the benefit of collection and

protection of the Sensitive Information belonging to Plaintiffs and the Class were the direct and primary objective of the contracting parties.

156. Defendant knew that if it were to breach these contracts with customers, the customers, including Plaintiffs and the Class, would be harmed by, among other things, fraudulent misuse of their Sensitive Information.

157. Defendant breached its contracts with its clients when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiffs' and Class Members' Sensitive Information.

158. As reasonably foreseeable result of the breach, Plaintiffs and the Class were harmed by Defendant's failure to use reasonable data security measures to store their Sensitive Information, including but not limited to, the actual harm through the loss of their Sensitive Information to cybercriminals.

159. Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Plaintiffs and the Class)**

160. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

161. This claim is pleaded in the alternative to the breach of contract claim.

162. Plaintiffs and Class Members conferred a monetary benefit on Defendant when Defendant's clients provided Plaintiffs' and Class Members' Sensitive Information to Defendant, which Defendant collected.

163. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Sensitive Information.

164. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and

the Class, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

165. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

166. Defendant acquired the monetary benefit and Sensitive Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

167. If Plaintiffs and Class Members knew that Defendant had not secured their Sensitive Information, they would not have agreed to have their Sensitive Information provided to Defendant.

168. Plaintiffs and Class Members have no adequate remedy at law.

169. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including, but not limited to: (i) the loss of the opportunity how their Sensitive Information is used; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Sensitive Information

compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

170. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

171. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them.

**FIFTH CLAIM FOR RELIEF**
**Invasion of Privacy**
**(On Behalf of the Plaintiffs and the Class)**

172. Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

173. Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly confidential Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

174. Defendant owed a duty to its consumers, including Plaintiffs and the Class, to keep this information confidential.

175. The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs' and Class Members' Sensitive Information is highly offensive to a reasonable person.

176. The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class disclosed their sensitive and confidential information to Defendant as part of their employment, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

177. The Data Breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

178. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

179. Defendant acted with a knowing state of mind when it failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

180. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

181. As a proximate result of Defendant's acts and omissions, the private Sensitive Information of Plaintiffs' and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages.

182. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class because their Sensitive Information are still maintained by Defendant with its inadequate cybersecurity system and policies.

183. Plaintiffs and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiffs and the Class.

184. In addition to injunctive relief, Plaintiffs, on behalf of themselves and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**SIXTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of the Plaintiffs and the Class)**

185. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

186. Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

187. Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"), and other state data security laws.

188. Defendant stored the Sensitive Information of Plaintiffs and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiffs' and the Class's Sensitive Information secure so as to prevent the loss or misuse of that Sensitive Information.

189. Defendant failed to disclose to Plaintiffs and the Class that their Sensitive Information was not secure. However, Plaintiffs and the Class were entitled to assume, and did assume, that Defendant had secured their Sensitive Information. At no time were Plaintiffs and the Class on notice that their Sensitive Information was not secure, which Defendant had a duty to disclose.

190. Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiffs' and the Class's nonencrypted and nonredacted Sensitive Information.

191. Had Defendant complied with these requirements, Plaintiffs and the Class would not have suffered the damages related to the data breach.

192. Defendant's conduct was unlawful, in that it violated the CCPA.

193. Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

194. Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

195. Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting Sensitive Information.

196. Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See*, e.g., Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

197. Instead, Defendant made the Sensitive Information of Plaintiffs and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiffs and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

198. As a result of those unlawful and unfair business practices, Plaintiffs and the Class suffered an injury-in-fact and have lost money or property.

199. The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

200. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

201. Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction

enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**SEVENTH CLAIM FOR RELIEF**
**Violation of the California Customer Records Act**
**Cal. Civ. Code § 1798.80, *et seq*.**
**(On Behalf of the Plaintiffs and the Class)**

202. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

203. Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." *Id.*

204. The Data Breach constitutes a "breach of the security system" of Defendant.

205. An unauthorized person acquired the personal, unencrypted information of Plaintiffs and the Class.

206. Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiffs and the Class but continues to delay formal notification. Given the severity of the Data Breach, the lack of formal notification as of January 12, 2025 is an unreasonable delay.

207. Defendant's unreasonable delay prevented Plaintiffs and the Class from taking appropriate measures from protecting themselves against harm.

208. Because Plaintiffs and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

209. Plaintiffs and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code § 1798.150**
**(On Behalf of Plaintiff and the California Subclass)**

210. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

211. Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted Sensitive Information of Plaintiffs and the Class. As a direct and proximate result, Plaintiffs, and the Class's nonencrypted and nonredacted Sensitive Information was subject to unauthorized access and exfiltration, theft, or disclosure.

212. Defendant is a business organized for the profit and financial benefit of its owners according to California Civil Code § 1798.140, that collects the personal information of its customers and employees, and whose annual gross revenues exceed the threshold established by California Civil Code § 1798.140(d).

213. Plaintiffs and Class Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards Sensitive Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold Sensitive Information, including Plaintiffs' and Class members' Sensitive Information. Plaintiffs and Class members have an interest in ensuring that their Sensitive Information is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

214. Pursuant to California Civil Code § 1798.150(b), Plaintiffs mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiffs believe such cure is not possible under these facts and circumstances—then Plaintiffs intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

215. As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

216. A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

**PRAYER FOR RELIEF**

Plaintiffs and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E. Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiffs hereby demand that this matter be tried before a jury.

Dated: January 13, 2025

Respectfully submitted,

By: */s/ Andrew G. Gunem*

Andrew G. Gunem (SBN 354042)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
agunem@straussborrelli.com

*Attorney for Plaintiff and the Proposed Class*